Jason B. Lattimore
**LATHAM & WATKINS LLP**
One Newark Center, 16th Floor
Newark, NJ 07101-3174
Telephone: (973) 639-1234
Facsimile: (973) 639-7298

<u>**OF COUNSEL:**</u>

Perry J. Viscounty
**LATHAM & WATKINS LLP**
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Facsimile: (650) 755-8290

Jennifer L. Barry
**LATHAM & WATKINS LLP**
600 West Broadway, Suite 1800
San Diego, CA 92101-3375
Telephone: (619) 236-1234
Facsimile: (619) 696-7419

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, INC.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| **ENTREPRENEUR MEDIA, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JEANNE GRAY, ENTERPRISING SOLUTIONS INC., and AEP, LLC,**<br><br>**Defendants.** | Case No.<br><br><br>**COMPLAINT**<br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Entrepreneur Media, Inc. ("EMI") brings this complaint against Defendants for federal trademark infringement and federal unfair competition/false designation.  EMI seeks monetary, injunctive, and other relief, and, in support thereof, states the following:

## PARTIES

1.      EMI is a California corporation, having its principal place of business at 2445 McCabe Way, Irvine, California 92614.

2.      On information and belief, Jeanne Gray, an individual residing in Westfield, New Jersey, operates the websites located at *usentrepreneurtoday.com* and *njentrepreneur.com* and is the president and founder of both Enterprising Solutions, Inc. and AEP, LLC  Gray is also the registrant for the *njentrepreneur.com* and *usentrepreneurtoday.com* domain names.  On information and belief, Gray was personally aware of, and authorized, approved, ratified, participated in, and instigated the wrongful conduct alleged in this Complaint.

3.      On information and belief, Enterprising Solutions, Inc. is a New Jersey corporation, having its principal place of business at 231 North Avenue, #334, Westfield, New Jersey 07090.  Enterprising Solutions, Inc. publishes content on the *njentrepreneur.com* website, and was the applicant of record for the application for federal registration of the NJENTREPRENEUR mark.

4.      On information and belief, AEP, LLC is a New Jersey limited liability company, having its principal place of business at 231 North Avenue, #334, Westfield, New Jersey 07090.  AEP, LLC is the applicant of record for the application for federal registration of the USENTREPRENEURTODAY mark.

5.      EMI is informed and believes, and on that basis alleges, that each of the Defendants was the agent and employee of the remaining Defendants and, at all times mentioned, acted within the course and scope of such agency and employment.

## **VENUE AND JURISDICTION**

6.      This is a civil action alleging trademark infringement and false designation of origin/unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

7.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the Lanham Act.

8.      This Court has personal jurisdiction over Defendants because Defendants reside, maintain offices, and conduct business in this State.

9.      Venue in this Court exists under 28 U.S.C. § 1391(b)(1) as Defendants reside in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EMI and Its Successful ENTREPRENEUR® Brand

10.     For over thirty years, EMI (together with its predecessor companies) have published magazines and books which provide editorial content and other information, as well as offer products and services related or of interest to businesses, business owners, and prospective business owners.

11.     EMI's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR® Mark").

12.     EMI is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR® name in their titles. ENTREPRENEUR® magazine is published monthly with a current paid circulation, including both subscriptions and newsstand sales, of more than 600,000 in the United States.  ENTREPRENEUR® magazine is also sold and distributed in over 100 foreign countries.

13.     ENTREPRENEUR® magazine routinely features articles and interviews of some of the biggest names in the entrepreneur community, including Richard Branson, skateboarding icon Tony Hawk, quarterback Drew Brees, and hip hop mogul Russell Simmons:

   

14.     ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EMI's top-secret formula:

   

16.     EMI also publishes over 200 book titles under the ENTREPRENEUR® name and ENTREPRENEUR PRESS® imprint:

  

5

17.     EMI has also launched many of its most successful titles as e-books:



| Start Your Own Child-Care Service (3rd Ed.) | Start Your Own Clothing Store and More (3rd Ed.) | Start Your Own Retail Business and More |

18.     EMI also conducts seminars, workshops and other educational services geared towards how to successfully start and operate businesses.  These events have included the Sales Success Secrets/Business Success Secrets® Breakfasts sponsored by State Farm Insurance; the Women in Charge Conferences sponsored by OPEN—American Express; the Business Success Secrets® Breakfast Seminars sponsored by Deluxe Corporation and Sprint; the Winning Strategies for Business Conference sponsored by Verizon; and Entrepreneur® Magazine's Growth 2.0 Conferences presented by The UPS Store®:









19. EMI operates a number of websites to further disseminate and market its content and services, including *entrepreneur.com*, *YoungEntrepreneur.com*, *EntrepreneurEnEspanol.com*, and *EntrepreneurPress.com*:



20. The website at *entrepreneur.com* has averaged over 6 million unique visitors and over 52.6 million page views per month, and is ranked in the top 1,100 sites in the United States by Alexa.

21. EMI has also launched apps for iPhones/ iPads, Android and Blackberry:

22. EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business. These co-branding relationships have included: The UPS Store®

(an annual contest and awards ceremony for selecting and promoting top

established entrepreneurs, emerging entrepreneurs, and college entrepreneurs);

MSNBC; Reuters; PerfectBusiness.com; Princeton Review (ranking top

entrepreneurial schools); Great Place to Work® (annual Best Small & Medium

Workplaces rankings); and Palo Alto Software (Entrepreneur® Magazine's

Business Plan Pro® software):



23.     Through careful cultivation of its various products and services, EMI

has developed an outstanding reputation as an innovator in the field of business

start-up and strategy and has established an extremely loyal customer following.

24.     EMI has received a tremendous amount of public recognition and

acclaim for the products sold and services provided under its ENTREPRENEUR®

brand.  Through EMI's widespread and continuous use of the ENTREPRENEUR®

Mark, the mark has acquired extensive goodwill, has developed a high degree of distinctiveness, and has become famous, well known and recognized as identifying goods and services that originate from EMI.

25.     The fame and quality of the products and services bearing the ENTREPRENEUR® Mark have been widely recognized through industry awards and commendations.  ENTREPRENEUR® magazine was a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious Maggie awards in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EMI's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the Entrepreneur Connect trademark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EMI has also received multiple Integrated Marketing Awards from Min Online for its magazine and website.  In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been named to BtoB magazine's 2010 and 2011 lists of the top 50 media outlets for business-to-business advertising.

## EMI's Intellectual Property Rights

26.     EMI owns, and has obtained United States federal registrations for,

the ENTREPRENEUR® Mark, as well as a family of related marks incorporating

the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities<br><br>First Use in Commerce: May 2, 1978 | 1,453,968<br><br>Aug. 25,<br><br>1987 |
| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others<br><br>First Use in Commerce: July 1992 | 2,263,883<br>July 27, 1999 |
| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises<br><br>41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance<br><br>First Use in Commerce: October 18, 1991 | 2,502,032<br>October 30, 2001 |
| ENTREPRENEUR.COM | 9: Downloadable podcasts in the field of business, current events, lifestyle issues, and developments in science and technology<br><br>35: Providing business information and advice via a website on a global computer network<br><br>38: Broadcasting programs via a global computer network; and streaming of audio and video material via the Internet; telecommunications services, namely, transmission of podcasts<br><br>First Use in Commerce: September 2002 | 3,519,022<br>October 21, 2008 |

| ENTREPRENEUR CONNECT | 42: Online business networking services in the nature of creating and hosting a community for registered users to create professional profiles, to participate in group discussions, to make business contacts, and to upload onto the website materials promoting their businesses, products and services<br><br>First Use in Commerce: April 26, 2008 | 3,652,950<br><br>July 14, 2009 |
|---|---|---|
| ENTREPRENEUR ENESPANOL.COM | 35: Advertising and business services, namely, arranging for the promotion of goods and services of others by means of a global computer network and other computer online service providers; providing business information for the use of customers in the field of starting and operating businesses and permitting customers to obtain information via a global computer network and other computer online service providers; internet advertising services, namely, promoting the goods and services of others by providing a website with active links to their websites featuring their goods and services<br><br>First Use in Commerce: October 13, 2006 | 3,266,532<br><br>July 17, 2007 |
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>35: On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>First Use in Commerce: April 1999 | 3,470,064<br><br>July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter, namely, magazines, books, booklets and published reports pertaining to business opportunities<br><br>First Use in Commerce: January 27, 2006 | 3,204,899<br><br>February 6, 2007 |

27.     The above marks are collectively referred to as the "EMI Marks."

The above registrations are collectively referred to as the "EMI Registrations."

28.     EMI's registration numbers 1,453,968, 2,263,883 and 2,502,032 for

ENTREPRENEUR® are incontestable pursuant to 15 U.S.C. § 1065.

11

29.     The EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

30.     EMI also has extensive common law rights in the ENTREPRENEUR® Mark, based on its use of that mark over the last three decades.

31.     Through extensive use, marketing, branding and promotion, the ENTREPRENEUR® Mark is well-known and famous, enjoying substantial recognition, goodwill and association with EMI.  The public distinguishes EMI's goods and services from those of other publishers and providers of educational services on the basis of the ENTREPRENEUR® Mark.  The ENTREPRENEUR® Mark is distinctive and has acquired secondary meaning in the United States.

32.     The U.S. District Court for the Central District of California held that:

- "The extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry."

- The ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection."

- The ENTREPRENEUR® Mark "has acquired secondary meaning."

*Entrepreneur Media, Inc. v. Smith*, No. CV 98-3607 FMC (CTx), 2004 U.S. Dist.

LEXIS 24078, at *9-10, 13 (C.D. Cal. June 23, 2004).

33. The Ninth Circuit reviewed the District Court's findings and

affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212,

2004 U.S. App. LEXIS 11567 (9th Cir. 2004).

34. Recently both a Magistrate Judge and District Court judge in the

Eastern District of Virginia found the ENTREPRENEUR® Mark to be distinctive.

*Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 1:11-cv-00409-LMB-

JFA, Docket No. 22 (E.D. Va. Dec. 6, 2011).

## **Defendants' Unauthorized Use of EMI's Marks**

35. Defendants offer a variety of business, educational and marketing

services targeted at small and medium-sized business owners under several

different marks that consist primarily of the word ENTREPRENEUR.

36. Defendants operate a website at the domain name

*usentrepreneurtoday.com*, which offers Defendants' services under the US

ENTREPRENEUR TODAY mark.

37. The *usentrepreneurtoday.com* website also offers state-specific

resources and services for several specific states, under the following marks: TX

Entrepreneur Today; CT Entrepreneur Today; NY Entrepreneur Today; and PA

Entrepreneur Today. (The marks discussed in paragraphs 35-36 will be

collectively referred to as the "US ENTREPRENEUR TODAY Marks").

38.     Defendants also run a Facebook page for the NY ENTREPRENEUR TODAY mark at: *facebook.com/#!/pages/NYEntrepreneurTodaycom.*

39.     Defendants also provide their services targeted at New Jersey under the NJ ENTREPRENEUR mark through the *njentrpreneur.com* website.

40.     Additionally, the NJ ENTREPRENEUR website offers seminars and meetings under the mark ENTREPRENEURS EXCHANGE.  (The marks discussed in paragraphs 38-39 will be collectively referred to as the "NJ ENTREPRENEUR Marks").

41.     Defendants have filed a federal intent-to-use application (Serial No. 85/249474, filed February 23, 2011) for the word mark USENTREPRENEURTODAY in Class 35 for "[p]roviding marketing services and marketing consulting services in the field of entrepreneurship"; Class 36 for "[p]roviding financing services for entrepreneurship"; and Class 41 for "[p]roviding a website featuring resources, namely, non-downloadable publications in the nature of newsletters regarding entrepreneurship, financing, marketing, government programs, university technology and commercialization and a range of other subjects that is informative and helpful to entrepreneurs and small businesses, including educating individuals about resources available within a national or state boundaries; educational services, namely, conducting webinars,

conferences, seminars and educational meetings regarding subjects such as entrepreneurship, financing, marketing, government programs, university technology and commercialization and a range of other subjects that is informative and helpful to entrepreneurs and small businesses, including educating individuals about resources available within a national or state boundaries."  EMI filed a Notice of Opposition to this application on February 21, 2012.

42.     Defendants also filed a trademark application for the mark NJENTREPRENEUR on August 26, 2009 in Class 16 for "newsletters in the field of providing entrepreneurs with relevant information" (Serial No. 77/812840). EMI's registration in Class 16 was cited against this application on the basis of a likelihood of confusion.  The Examiner refused registration, in concluding that "[b]oth marks are similar in sound, appearance, and meaning . . . [and] present a similar appearance and connote similar meanings. The minor difference between the two marks does not alter the commercial impression of the marks."  Defendants subsequently abandoned the application based on this refusal.

43.     Given EMI's renown, online presence, and its long history of providing articles, profiles and recognition for entrepreneurs via ENTREPRENEUR® magazine, the *entrepreneur.com* and related websites, seminars and other educational events, and providing networking services via its Entrepreneur Connect site, EMI is very concerned that consumers are likely to be

confused and in their confusion, to mistakenly believe that Defendants and their services are endorsed by or affiliated with EMI.

44.     This potential for confusion is heightened by Defendants' actual use of their marks, which offset the surrounding words, such as "Today" or "NJ", from "Entrepreneur," thereby making "Entrepreneur" the central focus of the marks and rendering the remaining words as mere additions or indicators of a regional association with ENTREPRENEUR®.  Similarly, Defendants' use of "Today" may be understood to indicate that Defendants are offering a daily version of EMI's well-known services and content.

45.     Defendants will thus enjoy the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

46.     EMI contacted Defendants several times to express EMI's concerns regarding this potential for confusion, but Defendants have refused to cease use of the infringing marks.

## EMI Is Suffering Harm from Defendants' Continuing Infringement and Unlawful Conduct

47.     Defendants' continued use of the US ENTREPRENEUR TODAY Marks and NJ ENTREPRENEUR Marks in commerce in violation of EMI's valuable intellectual property rights in the EMI Marks is knowing, intentional and willful, and is causing damage to EMI.

48.     Due to Defendants' willful continuing infringement and unlawful

conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights. EMI had to retain counsel and incur substantial fees and costs (and continues to incur those fees and costs) to prosecute this suit and pursue its claims.

49.     EMI's interest in protecting its intellectual property rights, and products and services from customer confusion outweigh any harm to Defendants. The public interest is best served by granting the requested relief to EMI against Defendants in this case.

## FIRST CLAIM FOR RELIEF
## Federal Trademark Infringement – 15 U.S.C. § 1114

50.     EMI incorporates by reference the factual allegations set forth above.

51.     EMI owns the EMI Marks and the EMI Registrations. The trademarks reflected in the EMI Registrations are strong and distinctive, designating EMI as the source of all products and services advertised, marketed, sold or used in connection with the EMI Marks. In particular, the ENTREPRENEUR® Mark has been used for over thirty years, and has been recognized by federal district courts as a strong and distinctive mark.

52.     EMI is the senior user of the EMI Marks, as it began use of the marks in interstate commerce prior to Defendants' first use of the NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks.

53.     Defendants do not have authorization, license or permission from

17

EMI to market and sell their services under the EMI Marks or the ENTREPRENEUR® Mark, which are confusingly similar to the NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks, and closely related to the particular products and services with which the EMI Marks and the ENTREPRENEUR® Mark have come to be associated.

54.     Defendants were aware of the EMI Marks and the ENTREPRENEUR® Mark, as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on (1) the citation of EMI's registration against Defendants' application for NJ ENTREPRENEUR, and (2) EMI's numerous communications to Defendants about this issue.  Thus, Defendants' unauthorized use of EMI's Marks was knowing, intentional and willful.

55.     As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

56.     Defendants' actions thus constitute trademark infringement.

57.     Unless an injunction is issued enjoining any continuing or future use of the NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation or sponsorship, and thereby will damage EMI irreparably.

58.     Defendants' activities have caused and will continue to cause irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks and the ENTREPRENEUR® Mark comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

59.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (a) requiring Defendants to account to EMI for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (b) awarding all damages sustained by EMI caused by Defendants' conduct.

60.     Defendants' conduct was intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EMI is, therefore, entitled to an award of treble damages against Defendants.

61.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), with the result that EMI is entitled to an award of attorneys' fees/costs.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

62.     EMI incorporates by reference the factual allegations set forth above.

63.     The EMI Marks, and in particular the ENTREPRENEUR® Mark, are strong and distinctive, designating EMI as the source of all goods and services advertised, marketed, sold or used in connection with those marks.  In addition, by virtue of EMI's decades-long use of the ENTREPRENEUR® Mark in connection with its products and services, and its extensive marketing, advertising, promotion and sale of its products and services under that mark, the EMI Marks, and in particular the ENTREPRENEUR® Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of New Jersey, and throughout the United States, associate the EMI Marks with a single source of products and services.

64.     EMI is the senior user of the EMI Marks, as it began use of the marks in interstate commerce prior to Defendants' first use of the NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks.

65.     Defendants were aware of the EMI Marks and the ENTREPRENEUR® Mark, as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on (1) the citation of EMI's registration against Defendants' application for NJ ENTREPRENEUR, and (2) EMI's numerous communications to Defendants about

20

this issue. Thus, Defendants' unauthorized use of EMI's Marks was knowing, intentional and willful.

66. On information and belief, through their use of the confusingly similar NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EMI somehow authorized, originated, sponsored, approved, licensed or participated in Defendants' use of the confusingly similar NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks.

67. In fact, there is no connection, association or licensing relationship between EMI and Defendants, nor has EMI ever authorized, licensed or given permission to Defendants to use the EMI Marks in any manner whatsoever.

68. On information and belief, Defendants' use of the NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks is likely to cause confusion as to the origin and authenticity of Defendants' websites and related products/services and is likely to cause others to believe that there is a relationship between Defendants and EMI.

69. As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

70. Defendants' actions thus constitute false designation of origin and

unfair competition.

71.     Defendants' activities have caused and will continue to cause
irreparable harm to EMI, for which it has no adequate remedy at law, in that:
(i) the EMI Marks and the ENTREPRENEUR® Mark comprise unique and
valuable property rights that have no readily determinable market value;
(ii) Defendants' infringement constitutes interference with EMI's goodwill and
customer relationships and will substantially harm EMI's reputation as a source of
high-quality goods and services; and (iii) Defendants' wrongful conduct and the
damages resulting to EMI are continuing.  Accordingly, EMI is entitled to
injunctive relief pursuant to 15 U.S.C. § 1116(a).

72.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order:
(a) requiring Defendants to account to EMI for any and all profits derived by
Defendants from their actions, to be increased in accordance with the applicable
provisions of law; and (b) awarding all damages sustained by EMI caused by
Defendants' conduct.

73.     Defendants' conduct was intentional and without foundation in law,
and pursuant to 15 U.S.C. § 1117(a), EMI is, therefore, entitled to an award of
treble damages against Defendants.

74.     Defendants' acts make this an exceptional case under 15 U.S.C.
§ 1117(a), with the result that EMI is entitled to an award of attorneys' fees/costs.

## PRAYER FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF

WHEREFORE, EMI prays for the following relief:

A.     An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

1.     cease all use and never use the NJ ENTREPRENEUR Marks and US ENTREPRENEUR TODAY Marks, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

2.     never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided or sold by Defendants are in any manner associated or connected with EMI, or are licensed, approved or authorized in any way by EMI;

3.     never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, authorized or sponsored by EMI;

4.     cease all use of the domain names *njentrepreneur.com*,

23

*ustodayentrepreneur.com*, and any similar domain names, and never register any

domain names that contain any of the EMI Marks, or any domain names

confusingly similar to any of the EMI Marks;

      5.     never unfairly compete with EMI in any manner whatsoever, or

engage in any unfair, fraudulent or deceptive business practices that relate in any

way to the production, distribution, marketing, and/or sale of products and services

bearing any of the EMI Marks; and

      6.     abandon the pending federal trademark application for

USENTREPRENEURTODAY, and never apply for, or seek to register, the NJ

ENTREPRENEUR Marks, US ENTREPRENEUR TODAY Marks, or any mark

that contains, or is likely to cause confusion with, any of the EMI Marks.

     B.     An order pursuant to 15 U.S.C. § 1116(a), directing Defendants to file

with the Court and serve upon EMI's counsel, within thirty (30) days after service

of the order of injunction, a report in writing under oath setting forth in detail the

manner and form in which Defendants have complied with the injunction.

     C.     An order transferring to EMI all domain names, including but not

limited to *njentrepreneur.com* and *usentrepreneurtoday.com*, in Defendants'

possession, custody or control that include the word "entrepreneur" or any

misspelling thereof, or that are otherwise confusingly similar to, or contain any of,

the EMI Marks.

D.      An order finding that, by the acts complained of above, Defendants have infringed EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

E.      An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

F.      An order pursuant to 15 U.S.C. § 1117(a) compelling Defendants to account to EMI for any and all profits derived by them from their unlawful and infringing conduct.

G.      An order pursuant to 15 U.S.C. § 1117(a) awarding EMI's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin and unfair competition, including a trebling of those damages.

H.      An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding EMI its reasonable attorneys' fees.

I.      An order awarding EMI all of its costs, disbursements and other expenses incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a).

J.      An order awarding EMI pre-judgment interest.

K.      An order awarding EMI such other relief as the Court deems

appropriate.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, EMI demands a

trial by jury.

Dated: March 5, 2012                    LATHAM & WATKINS LLP

By: _____ s/ Jason B. Lattimore _____
Jason B. Lattimore

One Newark Center, 16th Floor
Newark, NJ 07101-3174
Telephone: (973) 639-1234
Facsimile: (973) 639-7298

Attorney for Plaintiff
ENTREPRENEUR MEDIA, INC.